UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
-----------------------------------------------------------X

BURTON T. FRIED,

                Plaintiff,              Case No.

   -against-

WIGDOR, LLP f/k/a/
Thompson Wigdor, LLP , also f/k/a
Thompson Wigdor& Gilly LLP and       Date: July 25, 2014
DOUGLAS H. WIGDOR, Esq
                Defendants.
-----------------------------------------------------------X

## COMPLAINT

Plaintiff Burton T. Fried ("Plaintiff") by his attorney KENNETH A. VOTRE and ANDREW LAVOOTT BLUESTONE as and for his verified complaint against Defendants Wigdor, LLP ("Wigdor, LLP") and Douglas H. Wigdor, Esq. ("Wigdor, Esq.") complaining of the Defendants, alleges and shows to the Court as follows:

### JURISDICTION

1. This is an action for legal malpractice, breach of contract and breach of fiduciary duty arising under the laws of the State of Connecticut and the State of New York.

2. The court has subject matter jurisdiction pursuant to 28 U.S.C. Sections 1332(a) (1) and 1367. The amount in controversy exceeds $ 75,000.00.

3. Venue is proper in this Court under 28 U.S.C. Section 1391(a).

4. There is complete diversity of citizenship between Plaintiff and Defendants.

## STATEMENT OF FACTS

5. Plaintiff Burton T. Fried, resides in and is a citizen of Connecticut.

6. Defendant, Wigdor LLP, is a law firm consisting of partners and associate attorneys with offices for the practice of law at 85 Fifth Avenue, New York, New York.

7. Defendant Wigdor LLP is the successor to and was formerly known as (f/k/a) Thompson, Wigdor & Gilly, LLP and substituted as attorney for Plaintiff during the pendency of the actions in New York and Connecticut.

8. Thompson Wigdor & Gilly LLP later was formerly known as and became Thompson Wigdor LLP.

9. Defendant Wigdor, Esq., a resident of and a citizen of New York, is an attorney duly licensed to practice law in New York, in the U.S. District Court, Southern District of New York and in the U.S. District Court, District of Connecticut. He maintains an office for the practice of law at 85 Fifth Avenue, New York, New York.

10. Fried is 74 years of age.

11. He began employment as Vice Chairman and General Counsel of LVI Services Group Inc., the parent of LVI Services Inc. ("LVI"), in 1985 and worked for LVI in various positions from the commencement of LVI's business operations in July, 1986.

12. He was at times General Counsel, President and CEO, interim President and CEO, and Chairman of LVI during his tenure there.

13. Prior to and after LVI was sold to another company in 2005, he worked with LVI to identify a successor to him as President and CEO.

14. The shared desire was to find a manager with the skills to help LVI triple its revenue and earnings.

15. It was anticipated that the new President and CEO would take over the day-to-day operation of the business while Plaintiff became the active Chairman who would focus on growth initiatives and such other duties assigned by the new President and CEO.

16. In June 2006, Robert McNamara was hired as LVI's President and CEO, and Plaintiff moved into his new role as Chairman.

17. At that time Plaintiff agreed to a twenty percent reduction of salary along with a twenty percent reduction in work schedule.

18. In May 2010, McNamara resigned and Plaintiff was appointed as Interim President and CEO.

19. Plaintiff's salary and work schedule reverted to its former level, and he set out on a search for a new President and CEO.

20. Eventually, Scott E. State became a candidate for President and CEO. Plaintiff knew him and recommended that he apply for the position.

21. Plaintiff proposed Mr. State as an acceptable choice for President and CEO.

22. Mr. State had misgivings about Plaintiff's continued role.

23. On September 23, 2010, Mr. State accepted the position of President and CEO.

24. Plaintiff and Mr. State scheduled a meeting to discuss the duties Plaintiff would perform at LVI during Mr. State's tenure as President and CEO. Prior to the meeting, Plaintiff sent a list of responsibilities he performed as Chairman while Robert McNamara was President and CEO. The list was delivered as discussion document. The duties included: monitoring employee air travel, reviewing LVI offers of employment and selecting of outside counsel, among others.

25. At the meeting, however, Mr. State informed Plaintiff that not only was he not to undertake

new duties, but his present duties were being reassigned, and all of his responsibilities eliminated.

26. When Plaintiff asked why, Mr. State said "Burt, you're 71 years of age, how long do you expect to work?" Mr. State also advised Plaintiff that after all of Plaintiff's duties were reassigned to others Mr. State would determine if there was anything remaining for Plaintiff to do at LVI.

27. The Board was presented with this issue and sided with Mr. State. They informed Plaintiff by letter dated November 16, 2010 that his employment with LVI would be terminated effective November 30, 2010.

28. Plaintiff submitted a resignation letter as an officer and director of LVI on November 30, 2010 due to his employment termination.

29. At the time of Plaintiff's termination of employment by LVI, he was offered a non-executive position and consultancy agreement with LVI which included a waiver of his age discrimination claims.

30. Plaintiff refused to agree to the consultancy arrangement with the waiver of his age discrimination claims.

31. On November 14, 2010, Plaintiff retained predecessor Thompson, Wigdor & Gilly LLP, to prosecute a case of employment age discrimination against LVI, its board and various officers.

32. Thereafter, Defendants' predecessors prepared and filed a complaint to the New York City Commission on Human Rights claiming violations of the New York City Human Rights Law.

33. On December 13, 2010, Defendants prepared and filed suit on his behalf in United States

District Court for the Southern District of New York (the "New York matter") alleging age discrimination and retaliation in violation of the New York City Human Rights Law along with a cause of action concerning termination of plaintiff's daughter.

34. The complaint was amended to include causes of action for discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA")

35. On May 16, 2011, Plaintiff filed a complaint with the State of Connecticut's Commission on Human Rights and Opportunities ("CHRO").

36. The New York matter was litigated before Judge Rakoff of the SDNY who eventually rendered a decision and order, and then a judgment based on a motion for summary judgment dated October 4, 2011.

37. On October 4, 2011, Judge Rakoff issued his decision and order dismissing the New York matter except for the cause of action concerning termination of Plaintiff's daughter.

38. The cause of action for damages based upon termination of Plaintiff's daughter remained open and the case remained active in the SDNY.

39. On October 17, 2011, the CHRO granted Plaintiff's request for a release of jurisdiction on his CFEPA claims.

40. On November 11, 2011, a formal retention letter between Thompson Wigdor LLP and Plaintiff was signed.

41. Thompson Wigdor LLP subsequently became Wigdor, LLP which took over representation of Plaintiff in all matters where predecessor firms were retained or represented him.

42. On November 30, 2011, Plaintiff filed an action in the District of Connecticut (the "Connecticut matter")

43. On October 15, 2012, the Second Circuit affirmed Judge Rakoff's ruling, granting

summary judgment on Plaintiff's age discrimination claims.

44. Defendants shortly thereafter discontinued all causes of action in the New York matter.

45. That decision and order dismissed the complaint. The judgment arising therefrom was reviewed by the Second Circuit Court of Appeals. The Second Circuit Court of Appeals decided as follows:

> "Fried contends that the district court erred at the third step of the familiar McDonnell-Douglas burden-shifting framework, which governs ADEA discrimination claims (citation omitted) in two respects (1) by categorically concluding that "stray remarks" of age bias cannot raise an issue of material fact as to pretext; and (2) by failing to consider whether the totality of the evidence, rather than each piece of evidence individually, would permit a reasonable jury to find the alleged discrimination.

> District Court's decision and order recited that "if the Defendant satisfies this requirement [articulating a legitimate nondiscriminatory reason for the adverse act] then Plaintiff must show that age was the "but for" cause of the challenged adverse employment action."

46. Put another way, in the State of New York and in the Southern District, it is the obligation of Plaintiff to show that age was the "but for" cause of the termination decision. It is insufficient to show that age "was one of the factors motivating Defendant's decision."

47. Plaintiff's Connecticut matter claim rested on proofs that age was a "motivating factor in Plaintiff's termination."

48. The standard for CFEPA and ADEA are different.

49. The standard for the New York matter and the Connecticut matter are different.

50. The standard in the Connecticut matter was whether age was a "motivating factor" while the standard in the New York matter is that age must be the "but for cause" of the termination.

51. On March 18, 2013, with Defendants still representing Plaintiff, Judge Janet Bond Arterton of U.S. District Court, District of Connecticut, dismissed all claims in the Connecticut

matter on the basis of res judicata arising from dismissal of the New York matter.

52. Defendants argued in the Connecticut matter that Plaintiff could not have brought his CFEPA claims in SDNY because jurisdiction was not released until after the summary judgment was decided against Plaintiff.

53. However, Defendants never notified Judge Rakoff of the CFEPA application and never moved for a stay of the New York matter pending a release of jurisdiction by the CHRO.

54. On appeal from this second dismissal in the Connecticut matter, the Second Circuit found it undisputed that while discovery in the New York matter was ongoing, a complaint with CHRO was filed.

55. Similarly, it found undisputed that CFEPA claims must be processed initially through the CHRO, and may not be sued upon until the CHRO grants a release of jurisdiction.

56. It further determined whether the CFEPA claims could have been raised in the New York matter. Whether the CFEPA claim was actually raised "does not matter" for res judicata purposes.

57. The Second Circuit further found that it would have been "vastly preferable for Fried simply to seek to amend the complaint in the New York case. Instead, he chose to voluntarily dismiss the remaining claim in that case in order to pursue an appeal, and also to file the Connecticut case."

58. "Alternatively, the Second Circuit wrote 'Fried should have requested a stay of the New York case at the time he filed his CHRO claims.' That would have allowed the court in the New York case to consider the ADEA, NYCHRL and CFEPA claims all at the same time."

59. Dismissal of the Connecticut case on res judicata grounds was affirmed by the Second Circuit.

# FIRST CAUSE OF ACTION
## MALPRACTICE

60. Defendants undertook to represent Plaintiff in the Litigation based upon a claim of age-employment discrimination.

61. Defendants were admitted to practice law in the U.S. District courts of the Southern District of New York and the District of Connecticut.

62. Defendants were permitted to appear before New York State and New York City agencies which dealt with discrimination in employment.

63. Defendants were permitted to appear before Connecticut agencies which dealt with discrimination in employment.

64. Defendants filed claims in both New York and in Connecticut concerning a claim of age-employment discrimination which damaged Plaintiff.

65. Defendants chose the times and manner of filing claims.

66. Defendants chose the manner and forms of pleadings and procedure in both the New York and the Connecticut matters.

67. Defendants' choice of proceedings led to dismissal of the New York matter on the merits, and later dismissal of the Connecticut matter on the basis of res judicata.

68. On appeal, the Second Circuit found against Plaintiff in both the New York matter and in the Connecticut matter.

69. But for the procedure selected by Defendants, Plaintiff would have had a good and meritorious cause of action for age – employment discrimination, based upon the standard utilized in the Connecticut statute.

70. Had Defendants followed the procedure set forth by the Second Circuit, Plaintiff's claims based upon the Connecticut statute and its standard of proof would have been heard by a Court.

71. Instead, because of the procedure followed by Defendants, the claim was never heard.

72. Had the claim been heard, based upon the lesser standard of proof for the Connecticut statute, Plaintiff would have prevailed in proving that that age "was one of the factors motivating Defendant's decision."

73. Instead, because the Connecticut claim was never presented to the SDNY in the New York matter, Plaintiff was never permitted to litigate the claim in the SDNY.

74. Because the Connecticut claim was never presented to the SDNY in the New York matter, Plaintiff was never permitted to litigate the claim in the Connecticut matter in any forum.

75. Because Defendants discontinued the New York matter without ever attempting to obtain a stay of proceedings pending the CHRO decision, or sought to have the CHRO claim be consolidated or joined with the New York matter prior to the motion for summary judgment, Plaintiff was never permitted to litigate the claim in any forum.

76. Had Plaintiff been permitted to litigate the CHRO claim, the New York court would have been required to apply Connecticut law and procedure to that claim.

77. Had Connecticut law and procedure been applied to that claim, the stated connection between Plaintiff's age and his termination would have been sufficient, under Connecticut law, to show that age was one of the factors motivating Defendant's decision, ensuring a prima facie case, which would be heard by a jury.

78. Defendants failed to exercise the ordinary, reasonable skills and knowledge commonly possessed by a member of the legal profession, especially attorneys who practice in age-employment discrimination cases.

79. This failure to exercise the ordinary, reasonable skills and knowledge commonly possessed by a member of the legal profession proximately caused damage to Plaintiff.

80. This failure to exercise due care was the proximate cause of the injury to the Plaintiff alleged in all paragraphs above.

81. This injury consisted of failure to present evidence in support of the Connecticut claim, inability to prosecute the action on the basis of res judicata, loss of the meritorious claim for age-employment discrimination for which Plaintiff could have successfully litigated.

82. "But for" these failures, Plaintiffs would have had a subsequent settlement of his meritorious age-employment discrimination claims by payment of monies the failure of which was proximately caused by Defendants' wrongful conduct.

83. But for the departures of Defendants, Plaintiffs would have had a successful suit for age-employment discrimination and obtained a settlement or verdict.

84. Plaintiffs were proximately damaged by the negligence of Defendants which resulted in the dismissal of the New York matter on the merits, and dismissal of the Connecticut matter on res judicata grounds.

85. By reason of the foregoing, Plaintiffs are entitled to judgment against Defendants in an amount to be proven at trial but believed to exceed $ 8 million dollars.

## SECOND CAUSE OF ACTION
## <u>BREACH OF CONTRACT</u>

86. Plaintiffs re-allege the allegations contained in preceding paragraphs with the same force and effect as if separately set forth and numbered herein.

87. When Defendants agreed to be retained by Plaintiff to represent his interests, a contractual relationship was formed.

88. Defendants, in consideration of contingent legal fees, agreed to provide specific competent and professional legal services consistent with the accepted legal norms of the profession, to engage in certain actions, undertake necessary investigation and acts, make truthful notifications to the court, and truthfully to inform the court of their business and professional relationships as set forth above.

89. Plaintiff and Defendants entered into a contract in which Defendants agreed to represent Plaintiff according to the standards of good and adequate representation by an attorney and to perform certain tasks of investigation, and Plaintiff agreed to pay contingent legal fees.

90. Plaintiff paid or promised to pay contingent legal fees as demanded by Defendants, but Defendants breached the contract by the nature of their legal representation of Plaintiff, and *inter alia*, failures as set forth above in their dealings with the Court, as more fully set forth in the decision.

91. As a result, Plaintiff were injured in Breach of Contract, in an amount to be proven at trial but believed to exceed $8 million, the actual amount to be determined by the Court.

WHEREFORE, Plaintiffs demand judgment against Defendants for an amount to be determined at trial on each cause of action, together with the costs and disbursements of this

action, and for such other and further relief as this Court deems just and proper.

Dated: July 25, 2014
       New York, New York

                                                  Respectfully submitted,

                                                  Kenneth A. Votre (ct05981)
                                                  Votre & Associates, P.C.
                                                  90 Grove Street
                                                  Suite 209
                                                  Ridgefield, Connecticut 06877
                                                  Tel: (203) 498-0065
                                                  Fax: (203) 438-4202
                                                  votrelaw@gmail.com